Good morning, Your Honors, and may it please the Court, my name is Armando Aguilar-Lopez, counsel for Petitioner Claudia Marilyn Saravia Martinez, and I would like to reserve five minutes for rebuttal. This case, Your Honors, is about the federal government's attempt to limit this Court's power to review executive action, and about three ways the Respondent seeks to do so. First Respondent asks this Court to overturn its own precedent and foreclose review not just of one case, but for all reinstatement cases, and consequently foreclose review of all the issues, including important constitutional questions, that arise in those cases. Second, Respondent asks this Court to limit its authority to include the doctrine of equitable tolling, and to do so in a way that will extend beyond the immigration context. And third, Respondent asks this Court to completely deprive Ms. Saravia Martinez specifically of any judicial review, and that's despite DHS's conclusion that she has a credible and a reasonable fear of persecution or torture. And why does Respondent ask this of the Court? Because back in 2016, Ms. Saravia Martinez failed to predict that almost ten years after her entry, the Supreme Court would issue a landmark decision abrogating this Circuit's long finality. Now, first on the jurisdictional issue, Your Honors, under the rule of orderliness, and in light of the strong presumption in favor of judicial review, this Court should reject Respondent's request to overturn its precedent. This Court's jurisdiction over reinstatement orders is consistent with Nasrallah, with Johnson, and with Riley. Nasrallah and Riley simply clarify that an order of removal is the order that does one of two things. It either concludes that the individual is removable, or it orders removal. As explained in our letter brief, the reinstatement order here does both of those things, but at a minimum, it's certainly the order of removal. And we know this because the reinstatement order itself states, and I quote, in accordance with Section 241.85 of the Act, you are removable as an alien who has illegally re-entered to the United States. I certainly understand you've got your withholding only claims. Those are pending, or maybe you've already begun to have proceedings on those? Yes, Your Honor, that's correct. Just a month or two ago? So the withholding only hearing, the final hearing at which it will be adjudicated, is currently pending. It has not happened yet. I thought something happened in January of this year, no? Yes, it was reset by the court because of logistical... So what would you want to challenge in the restatement? If you were able to challenge the reinstatement order, what aspect of it? There's not much to challenge. Well, in this case, Your Honor, we are not challenging the reinstatement order itself, at least not the factual determinations made there. We are challenging or seek to be able to challenge the fear-based claim that is a part of that reinstatement order. So it's a vehicle to keep your client here? Is that... Yes, Your Honor, it is a vehicle... I guess I'm saying, if we were to agree you get equitable tolling, what happens next as to the reinstatement order? Yes, so Riley did change the procedural process for claims like Mr. Rabin Martinez. One thing that Ms. Rolla has clarified, nevertheless, is that this court has direct review over CAT claims. For example, Mr. Rabin Martinez has a CAT claim that is currently being adjudicated by the agency. And what we would be seeking, if equitable tolling is warranted and found to be available here, is that this court employ a procedural device to hold, perhaps, this case in abeyance until review is completed at the agency level or before EOIR. And then at that point, if there is a challenge to the fear-based claim, Mr. Rabin Martinez be permitted to challenge that claim in this court. And so, just to complete the point about the removal order and why this court has jurisdiction under that definition, we know that the removal order encompasses reinstatement orders because without the reinstatement orders, DHS simply cannot remove the individual. DHS is required to undertake a process and make determinations before the individual can be removed. And for that reason, under Riley, under Ms. Rolla, under Johnson, a reinstatement order continues to be a final order of removal under that definition. And the Riley court clarified that that is all that is required. So at a minimum, it is a removal order and ultimately respondent here fails to meet the high bar that is required to meet to overturn precedent under the rule of orderliness. Okay. What I'm trying to understand, though, is even if 12b1 is no longer jurisdictional, it's still a mandatory rule. So why shouldn't that be followed? Yes, Your Honor. So it is a mandatory rule and this court did find so in Lau v. Bondi. But nevertheless, equitable tolling is available under Supreme Court precedent because here on the merits of the equitable tolling question, two presumptions are at play. First the presumption in favor of judicial review, and importantly, the presumption that we see in Irwin and in the Irwin line of cases that favors equitable tolling. And so yes, the mandatory label does something. It instructs courts on what must happen when three things are present, or three things are true, I should say. The petition is untimely, the government objects on timeliness grounds, and equitable tolling is not requested. But that is not the case here. Here equitable tolling was raised, and importantly in Lau v. Bondi that was not raised in that case. But it was a really long time after she came back in, and that's a tough one. So the amount of time that's transpired since she entered, Your Honor, is certainly relevant to the warranted question. But whether it's available, what the Supreme Court has done time and time again, is go through the factors that we see in cases like Boesler, cases like Harrow, well in that case, in the Harrow court, the court ultimately didn't actually decide whether equitable tolling is available. It remanded to the circuit court. But in cases like Boesler, in cases like Holland. Will it reverse the Federal Circuit and remand it? Certainly, Your Honor. Yes, it did. And in remanding, importantly, what the Supreme Court said in Harrow is that the government must nevertheless contend with a high bar that is the Irwin presumption in evaluating whether equitable tolling is available in that statute. And so here, would you agree the big issue here is what does Nutraceutical do with the Irwin presumption? And whether we can look to a rule to discern congressional intent as to whether or not Congress has decided to forbid equitable tolling. Is that the crux of the difficult issue here? So I don't actually believe that Nutraceutical poses an issue here, Your Honor. And the reason why is because Nutraceutical involved a procedural rule, not a statutory limitation. So therefore, the question is, can we discern congressional intent in a procedural rule that Congress didn't disapprove of? Because it became force of law once Congress didn't disapprove of it. Well, I think, Your Honor, there is something to be said about the Irwin line of cases where the Supreme Court has specifically looked at ordinary tools of construction, you know, history, text, to discern congressional intent and whether the presumption is rebutted. Importantly, the presumption was not present in Nutraceutical. And so the Supreme Court did not contend with the presumption and whether or not procedural rules could affect the presumption and the analysis that follows it. And so I think— So your cabinet, you're saying Nutraceutical dealt with one rule can't invalidate another rule. But it doesn't speak to whether a rule can give us insight into a statutory deadline? Is that your argument? That is the argument, Your Honor. And even if this Court were to find that the federal rules could say something about whether or not the presumption is applied in cases where there's a statutory deadline, I think hearing 26b specifically by its own terms would allow this Court to find that it is irrelevant to the 1252b1 deadline because it applies by its own terms to only rules and court orders. And we know that Congress—or that the rules made it clear when a statute was impacted by the rules because 26a, the prior subsection, which deals with computation of time, did make it clear that that rule impacts rules, orders, and statutes. But the word statute is missing in 26b. So by its own terms, 26b does not apply to statutes. And so for that reason alone, this Court should not include it in the analysis. Okay. What case do you want to cite for us that is the best case to say equitable tolling is available under 1252b1, very available, not just a little trickle out there? No, certainly, Your Honor. I think the one case would be Boesler. But the Court could also look at Holland, for example, and actually could also look at cases, the Supreme Court cases, where the Supreme Court has found equitable tolling does not apply because this statutory deadline is easily distinguishable from those cases. So Boesler, for example, relied on the fact that the deadline was short and that it was directed at non-citizens and only mentioned once. So in that case, the Court found that for those reasons, and among others that we detail in our briefing, equitable tolling was allowed and available. But the language of must be filed, for example, can also be distinguished to language that's used in a case like US v. Wong, where equitable tolling was also found. There, the language in the statute was shall be forever barred. And that is much more emphatic language than we have at the deadline in 1252b1. And unlike Rockham, for example, where the Court found no tolling was available, the deadline here has common and simple limiting language, as opposed to the deadline there where you had several exceptions. I think it was up to 16 exceptions allowed for the overall section that was at issue. And here, there are no exceptions that 1252b1 provides. Now importantly, the Court has also looked at administratability concerns when evaluating whether tolling is available. And here, those administratability concerns shouldn't be weighed against petitioners like Mr. Evan Martinez, particularly, as the Riley Court noted, where the government can do exactly what it did in Riley's case, or Mr. Riley's case. There, it waived timeliness because of the circumstances. And here, the government could also choose to waive timeliness for petitioners like Mr. Evan Martinez who were directly impacted by the Riley decision. I remember the majority, Justice Alito was saying the government might well want to stay the pending petition, but did the majority in Riley also say the government should waive the deadline? Yes, Your Honor. The majority, well, it was a suggestion that Riley should provide it. I know there were suggestions, but I thought it was more that these petitions should be stayed pending the withholding only proceedings. But does the majority specifically speak to and urge the government to waive the deadline in 2252? It does, Your Honor. And there are multiple suggestions at different parts of the majority opinion, and that is one of them. Okay. Now, courts have also looked at the interest at issue when evaluating whether tolling is available. And here, it cannot go unsaid that the interest in the judicial review of fear-based claims is particularly strong. Everyone makes mistakes, but here, if a respondent makes a mistake, someone can erroneously be deported back to a country where they are at risk of death or torture. And that is in direct contravention to the obligations that this country has made to people who are at risk of torture. And finally, Your Honors, as to whether equitable withholding is warranted. Is that your argument for why it was okay for her to come back even though she was told not to? Well, Your Honor, I think it's important to note that Ms. Saraven Martinez did, in fact, unlawfully enter. But she unlawfully entered fleeing persecution in El Salvador. And after she unlawfully entered, she availed herself of a process that Congress outlined for people like her. And I'm kind of wondering because, while, of course, I love America, there are other countries in the world. So why wouldn't she go to a different country if she didn't want to stay in El Salvador, go to some other country since she was told not to come here? It's not as if the world doesn't have other countries besides America and El Salvador. There's a ton of countries, some of which are nice. Of course, I think America's the best. I get that. But there are other nice countries. Well, Your Honor, to that, I'd say, so there's nothing in the record that indicates why Ms. Saraven Martinez specifically decided to come here to the United States. Well, she had been here and presumably this is where she conceived her child. Yes. Okay. And there was incredible fear determination that she would sound credible that after she was sent back to El Salvador, MS-13 threatened to kill her, plus now her child also, right? Yes, that is correct, Your Honor. So she's going to leave. And so she fled back to the United States. And I think it's important to note that Congress specifically allowed for this process to be undertaken after somebody unlawfully enters. And so the obligations that we have to protect people from torture were higher and were considered by Congress over just the mere fact that somebody enters and the country's willingness or desire to be able to remove individuals at an efficient rate. So do I understand your equitable tolling argument turns on Rule 26B being a rule rather than a statute? I think I heard you allude to that earlier. That is one of the arguments, Your Honor. What do you do with nutraceutical, which makes clear that, I'll just quote it, courts may not disregard a properly raised procedural rule's plain import any more than they may disregard a statute? Well, Your Honor, yes, a procedural rule should still be given a lot of weight. I think that the Court was silent as to whether that weight corresponds to the statute and whether it can prohibit a statute in the context of the presumption. OK, so it's not about whether it's a rule or statute at all. That's not doing the work. You're just saying Rule 26B is not clear enough? Well, Rule 26B, by its own terms, also doesn't apply to statutes. So even if this Court... Well, it applies to deadlines. Deadlines for petitions for review of agency actions, which is clearly the case. Well, Your Honor, I think that the word deadline is used, but in that same rule, you have the application only being in the only the application of the rule only being applied to the procedural rules and orders, as opposed to 26A, for example, that deals with computation of time, where statutes are specifically enumerated in what the rule applies to. Last question. Do we even get to this issue? Because it seems to me that Leal already holds that since the... I'll just quote it. Since the government did not waive the application of 1252b1 filing rule, and I assume you agree the government has not waived it, are they trying to enforce the deadline? Yes, Your Honor. It's correct that the government has not waived the deadline. So Leal says in that situation, quote, the mandatory claim processing rule must be enforced. Period. No exception. Your Honor, the period, the tolling... Period. No exception is fine. I'm adding the no exception, but it says this mandatory rule must be enforced so long as the government is asserting it, and the government has asserted it here. Yes, Your Honor. What's left of it, maybe you can take it on back, but Leal seems to cover this fact better. Well, I would disagree that Leal covers this fact better, Your Honor, because in Laos, the equitable tolling request was not raised. And I think what the court... Okay, fair enough, but there are any number of exceptions that may or may not have been  Leal seems to say that so long as the government raises it, it must be enforced. Well, I think, Your Honor, in docket 131, the court can see that there was... You were talking earlier about we're not supposed to overturn our own precedent. Yes, Your Honor. So I think what is illuminating here is in docket 138 of Laos, the court can see that in an order where the court rejected a request for rehearing, there's a footnote in which the court said that assuming without deciding that equitable tolling is available, that that was foreclosed because Mr. Laos didn't raise it. And so I think there the court can find that it was specifically not raised in Laos, and therefore not decided. And I think those questions are left open for this reason. But the docket 138 doesn't cut against you? In other words, that issue was discussed in Laos, the notion that equitable tolling could have been asserted but wasn't. The court nevertheless... I wasn't on the panel, but the panel says, we're going to enforce this deadline. The only requirement is the government has to assert it. Well, no, Your Honor, because the court only enforced the deadline because equitable tolling was not raised. And I think the footnote makes that clear. We also have the Supreme Court, for example, in Portland County, Davis v. Texas, explicitly stating that it has reserved the question of whether mandatory claims processing rules are entitled to equitable tolling principles. And so at a minimum, the court has not squarely decided this issue, and it's an open question that Laos, for those reasons, does not decide. Okay. Unless there's other questions, you've saved time for rebuttal. Thank you. Thank you, Your Honor. And we will now hear from the government via Lindsay Corliss. Yes. Hi. Good morning. May it please the court, Lindsay Corliss for the respondent. This court should dismiss the petition for review or alternatively should deny it as untimely. This court lacks jurisdiction over this case for two reasons, and I'll begin with the statute, which at 1252A1, this court has jurisdiction only over final orders of removal. A final order of removal is not an ambiguous term, it's a term that has a definition in the statute. It is an order that concludes that an alien is deportable or orders his deportation. And since I rarely substitute... So you are asking us to overrule as a panel, President Fischer? We are. We are. And that's because something in Riley unequivocally overruled it? Yes. Okay. What exactly in Riley spoke to reinstatement orders? So this court has long acknowledged that reinstatement orders are not... No, I'm asking what in Riley speaks to reinstatement orders? Riley speaks to a strict fidelity to the definition of a final order of removal in section 1101A47. This court... But does Riley speak at all to reinstatement orders? To reinstatement? No. Guzman-Chavez discusses reinstatement. Riley is discussing whether withholding only, which is another sort of order that sort of looks a little bit like a final order of removal that courts were asserting jurisdiction over. Right. And we pointed that out. These things sort of look the same, but that doesn't sound like an unequivocal overruling. Well, so... Just because something looks the same as something the Supreme Court did, that's not an unequivocal overruling. The Supreme Court seemed to see these cases as linked. The three cases that the Supreme Court was finding on, Riley, Guzman-Chavez, and Nasrella, they kept citing back to their previous cases to say, we have been telling you courts that this is the definition of a final order of removal. So the Supreme Court at least saw those three cases as being linked, as saying that there is a definition of a final order of removal, and something either is a final order of removal or it's not. And Bhakta Bhai Patel, in the Second Circuit, did a very good job of kind of explaining that something either is a final order of removal or not. And then this court, in Ruez-Perez, in the dissent of that, Judge Oldham quotes Bhakta Bhai Patel and says that Congress did not grant the courts the authority over something that is sort of like a final order of removal, it granted it only over final orders of removal. So when the Supreme Court is saying things like cap protection orders, withholding only orders, or reinstatement orders in the context of, that was a detention case in Guzman-Chavez, although it did deal with reinstatement orders. When the court is saying that these do not meet the definition of a final order of removal, the Supreme Court is overruling this court's precedent that established that, that stated that you could still assert jurisdiction over cases that were not actually final orders of removal. And this court did state in several cases that reinstatement orders are not, the words that they used, literally, final orders of removal, that's from Ojeda-Tirazas. They have virtually exactly the same characteristics. They do, between reinstatement orders and final orders. Well, they don't, though, and a great case to explain the difference is actually Rodriguez-Ramirez in the Second Circuit, that was cited in a 28-J that we filed because it was a recent case that came out post-briefing. And they, the Second Circuit in that case really goes through why reinstatement orders are different from final orders of removal. Just that 28-J, I can ask them their response, but therefore, the Second Circuit's already ruled in your saying no jurisdiction over these? Yes. So, the Second Circuit has already ruled that reinstatement orders are not final orders  No, but did it ever say it lacked jurisdiction to review? It didn't. So, the Second Circuit case was in the context Just a yes or no question. Oh, sorry. No. Okay. Would you like to, need to explain the context? No. I'm, you've just pressed time. I think the equitable tolling is a difficult issue. Do I understand your logic to be that you're primarily saying that a rule, a procedural rule that Congress didn't disapprove of, you can extract, you can see in that judicially created rule that Congress doesn't disapprove of, that evinces an intent to say that 2252's statutory deadline actually is forbidden from equitable tolling? Well, at least two circuits have held that. The Second Circuit and the Seventh Circuit have both held that nutraceutical abrogated that, which discusses a rule, nutraceutical discussed a rule as well, abrogated Irwin's finding. But... The Second... The Second and the Seventh. Okay. Is that... The Eleventh may have also, right, in an unpublished ruling? I'm sorry. I'm not recalling the Eleventh. Okay. I may be mistaken. But the D.C. Circuit's gone the other way. The D.C. Circuit did not. Are you talking about OHA? Nelson. In OHA, the D.C. Circuit. No, in Nelson. The D.C. Circuit. In the Nelson case. The Nelson case. I'm sorry. I'm unfamiliar with Nelson. But do you know that, oh, the Fed Circuit. I'm sorry. The Fed Circuit in OHA. Talked about this. It is... That case is cited in a footnote that we have, where it discussed Congress' intent with respect to that. I'm sorry. I actually... Let me quickly find it for you. I don't want to waste the time.  It is... It's the D.C. Circuit Nelson decision, Judge Childs, rejecting the SEC's claim that 26B displaces the presumption equitable tolling is available. Okay. Well, then apparently there is a circuit split, but even if you were to apply the presumption in this case, and I'd be willing to, as a hypothetical, say, let's apply the presumption here, the Supreme Court has still said that it's only a presumption and it may be rebutted. And in this case, it is rebutted based on the emphatic language of the statute, in addition to the fact that Rule 26B has always been cited as a limit on that. So, Stone... And how would you respond to their comments about Harrell? Because the Solicitor General in Harrell specifically tried to use 26B as to a statutory deadline, and the Supreme Court didn't adopt that. Well, so this... In Stone... No, in Harrell. In Harrell. Okay. Well, you know, I don't recall the specifics of Harrell, why that was rejected at the time, but it was likely based on the language of the statute, because 26B actually directs the courts to look to the statute. 26B says, unless it's specifically authorized by statute. So when you see 26B, it's not a complete prohibition, it's a reminder to go back to the statute. So if we look back at what the statute actually states as far as that deadline, it says that a petition for review must be filed not later than 30 days after the issuance of the order. So we have two imperatives there, must and not later than. And that must is quite intentional. It's actually... It was amended. It used to say may. It used to be the permissive, and they changed it to the imperative from may to must. Additionally, this is in a statute that has other language right there in it, other ways of setting deadlines, and other ways of telling petitioners how to file their petitions. It says that they shall file it in the correct venue. The venue uses shall instead of must. Then they discuss the filing of briefs. I've just checked. The reason I was asking you about Harrow, Supreme Court, Nelson, D.C. Circuit, they're both in the briefs of opposing counsel. You're not familiar with either of those cases? I'm sorry. I'm not recalling them right at the moment. I apologize. I'm happy to talk about them. You know, I can file a response to their court. I'm also happy to discuss several of the other cases that they discussed, like Holland, Bosher. Maybe just looking at Riley. Justice Alito writes for six justices, and he seems very aware of and concerned about the predicament someone like this petitioner's in. Long-standing Supreme Court law, you can't petition, then all of a sudden the court changes its mind. Sounds like a classic equitable trap. And then the justice, even in an advisory manner, says the government might want to waive the deadline. The government can't. But let me just ask you, therefore, aware of that advice as to the same issue. You are not waiving the deadline here. Is that correct? Yes or no? It's correct. Okay. And the second question is, he also said in other room, if the government chooses not to waive, so the trap is there, circuit courts might want to consider staying the petition to allow the other. What's your thought on that? So first, that was the response. Before Riley, the government wanted the courts to find that they could review the withholding only and that that would have been a timely order. That was what both parties, both the government and petitioner, wanted that, and that's what they argued before the Supreme Court. What the majority is actually responding to is the dissent, where the dissent is saying this is creating a logistical nightmare, including for the government. And so the majority is not necessarily saying that the government must waive. It's saying, one of the ways-  It's saying it uses sort of admonitory terms. There are two ways to solve it for utterly innocent litigants. Someone like this that couldn't have petitioned in time. There are two ways to avoid just that little window of litigants that are trapped. One is the government waives. The other one is that the Court of Appeal stay the matter. Why would you object to either just for a litigant like Ms. Martinez? There are a number of reasons that go into whether or not the government waives. You must have a standard as to whether you'll waive the deadline or not. What's the government's standard when it waives this deadline? Well, prior to Riley, we did not have Riley as a guide to understand that this wouldn't be- No, I know, but you do now and you are waiving in other cases. So what's the standard and why is it inapplicable to her? We are not waiving in any cases currently. Are you confident of that representation? I'm confident of that representation, that currently and going forward, or at least for now, we are not waiving. But she does get review. She is currently in withholding only proceedings. But the statute states that when someone is in reinstatement proceedings, they do not get removal proceedings. So it doesn't make any sense to say that she would- When you say she gets review, you're also not denying that the government could choose to deport her back to El Salvador and the review would be when she's there. I don't- she is currently before an immigration judge and she can't be deported to El Salvador until her withholding only proceedings are over. Okay, that's very important for me to hear. She cannot- No, she's not going to be removed without her withholding only proceedings to El Salvador, without her withholding only, because she has expressed a fear to El Salvador. And she gets two levels of review on that, before an asylum officer, and then after that, before an immigration judge. And so that's part of the reason why, you know, this is a 2016 order and now here we are- Okay, so she- okay. Ten years later and she is still going through proceedings. I wanted to address a little bit Navrat, which is a recent Ninth Circuit case that was also filed in 28J. It came out about 10 days ago. In the- what the Ninth Circuit said, that case was a very similar sort of case, where there was a reinstatement order and there was a withholding only order that was also added to it once that was decided. What the Ninth Circuit there said, that there has to be an actual dispute within the four corners of the actual removal order, which the Ninth Circuit considered to be the reinstatement order. We would dispute that in this case, but the Ninth Circuit considered that to be the reinstatement order. The Ninth Circuit ended up dismissing that case, because there wasn't a colorable claim regarding that order. That is the second reason why this court lacks jurisdiction over this case. It's because there's been no colorable claim that's been raised regarding her reinstatement order. Since you went back to the jurisdictional issue, is the government thinking about pursuing en banc here, just to- I know you- there's a debate about whether it's foreclosed by precedent. En banc would obviously take care of that. Is the government seeking en banc? We didn't- we have not sought en banc, primarily because we believe that those three cases- I understand you think that you can get around the precedent, but en banc would avoid that argument altogether. It would. I mean, en banc- But you're not asking us to go en banc. I do not have authority to personally ask you to do that. So- That's why I'm saying it out loud. So, well, I mean, that is a possibility that you might consider. I am not- so these three cases do definitively state what is a final order of removal. This court has said repeatedly that a reinstatement of removal order is not a final order of removal. Can I go back to the en banc point? The reason I ask if the government's going to ask is, on the one hand, I could not agree with you more. Could not agree with you more that we can go en banc sua sponte. Our rules say so. Our rules in fact make that emphatic. Having said that, there are cases where I've tried to go en banc sua sponte, and I've been told by colleagues that I'm speaking in terms of public opinions, not private conversations. Nobody asked for en banc. That's an argument not to go en banc. I agree with you that that is actually contrary to our rules, but there are judges on this court who have said that. We are not- So without an en banc petition, notwithstanding the rules, that is apparently an argument against going en banc. So I just want the government to know that. Okay. I will bring that back to my office when we consider how to handle this case. And we are not arguing- Yeah, I'm not hearing you. Yeah, the government is not opposed to en banc. You're saying we can do it sua sponte. My point is, don't count on sua sponte, because in cases like Mies v. Becerra, people have said, actually, without a petition, that's an argument against en banc. That may be wrong, but judges can be wrong. Although we have that sua sponte, but just not very much. Well, in Ruiz-Perez, which was actually issued, it was issued in 2023, so that was before even Riley. In the dissent, in Judge Oldham's dissent, he states that he believes that just Chavez-Guzman and Nasrallah alone were enough to either say that your precedent in Ponce Osorio had been overruled or to go en banc. So, at least one judge on your court has, in the past, stated that those two cases alone were sufficient to either find that your precedent had been overruled definitively by the Supreme Court or- Right, but that's not a panel precedent. Yes, I'm just saying that that's, I mean, perhaps you find your colleagues more persuasive than me. So, you know, then you would- Well, I'm actually not following you, though. The fact that it's persuasive is the reason to go en banc. Now that that panel, we're not on that panel where you're talking about the Oldham dissent. That is now a binding precedent on this Court. Well, right. So, you would have to take that en banc or take this case en banc. Right, although that case- But ma'am, just to be clear, right? Well- So, it doesn't matter how persuasive I find that dissent. I'm now bound, as is every member of the Court, by the majority opinion from which that judge was dissenting, correct? Well, you're bound by consensorial. I will just say that the majority agrees with you that a reinstatement order is not a final order of removal. They said that, but then they also said that the issue wasn't briefed by either side and that they could find separately, they could dispose of the case because what the person was asking for was cancellation of removal, and they said cancellation of removal isn't available in reinstatement proceedings anyway. So, that's what we're going to find on. But they agreed that reinstatement orders are not final orders of removal. So, everyone on that panel agreed that reinstatement orders are not final orders of removal, and this Court has consistently said that they're not final orders of removal. They were just asserting jurisdiction over them in the same way that this Court was asserting jurisdiction over cap protection orders and withholding only orders. The Supreme Court has been consistently stating in those three cases, these courts, you need to actually look at the definition of a final order of removal. It's defined in the statute. It doesn't mean, like, it either is a final order or it's not, just like the Second Circuit said in Bakhtbhai Patel. But if there are no other questions, I will thank you for your time. What's the status of Riley on remand? Do you know? What is the, I don't know. It has not been decided on remand yet, in the Fourth Circuit. So, it's still with the Circuit? It'll be with the Fourth Circuit. And, okay, they'll be addressing some of these issues? They may, yes. Do you have any disagreement with opposing counsel's characterization of what was found credible as to Ms. Martinez? Well, there's no, so the asylum officer, so she hasn't gone through her immigration proceedings. I know, but the asylum officer did find her credible as to her fear, yes? Well, they gave her a credible fear finding from an asylum officer, so she's going through proceedings. I'm not, this is not about, I mean, jurisdiction is not about what she, whether or not she's telling the truth. If she, you know, she was found credible, but she's now in and withholding proceedings, and that is the process. Congress told DHS to promulgate regulations on how to deal with reinstatement cases, because they don't get removal proceedings. And this is the process that she's going through. And I have only 20 seconds, so, unless there are other questions, thank you for your time. Okay, thank you.  We'll now hear the rebuttal. Thank you, Your Honor. So, I'd like to just make a few points to address what my friend on the other side just said. So, Octify, yes, indeed, did discuss final orders of removal, but I think what's important to note there is that ultimately the court found that it, or it affirmed that it has jurisdiction over reinstatement orders under 1252A1. Now, as we noted in our response to the 28-J letter for the Rodriguez case that was cited by Respondent, Respondent, again, mischaracterizes that decision. There was no discussion of jurisdiction in that case. The court, the Second Circuit in that case, was merely describing the differences between a immigration judge order, for example, and a reinstatement order in that context, because it was about whether Respondent in that case was prejudiced, and whether the fact that there was a subsequent reinstatement order could affect the prejudice analysis in that case. So, as any circuit yet said, it has no jurisdiction to review a reinstatement order. The Ninth Circuit in Navarrete, Your Honor, has found, because of a different jurisdictional issue, and I'm ready to address that as well, but no circuit has found that it does not have jurisdiction over a reinstatement order because it is not a removal order under the definition clarified by Riley and Ezrala, and as noted in our brief. This is then getting to the equitable tolling issue. You probably have a few comments you want to make, but there is the representation, and I assume Ms. Corliss is from Office of Immigration Litigation, that your client will not be removed. Your client will stay here until the withholding-only proceedings. So, isn't that essentially a functional equivalent of tolling? Well, it is not, Your Honor, because there is an open question as to whether she would have judicial review of her fear-based claim in this court if the government were to continue on with withholding-only proceedings, and then ultimately the immigration judge finds that there is no fear-based claim. And I think that's what the Supreme Court in INS v. St. Cyr, and also in Colcano, the companion case in that case, was talking about when it described the constitutional question that would be posed if there was no avenue to review the agency decisions if there was an error. And in this case, it is unclear yet whether there is an error, and so we are seeking equitable tolling to have the case now petitioned in light of Riley. That's why maybe the opposing counsel may be right. What's the colorable claim against the reinstatement order? Well, Your Honor, our position is that there is no need for a colorable claim. So, in the Ninth Circuit decision, that is not binding and certainly should not be persuasive because it is inconsistent with Supreme Court precedent, the Court heavily relied on Justice Thomas' concurrence for the proposition that you must substantively challenge the final order of removal. But there is nothing in this, Raleigh nor Riley, that even contemplates a substantive challenge to the removal order itself. In fact, Justice Thomas' concurrence, as explained in our letter brief, was looking at a procedural defect that it saw in Mr. Riley's case. There, Mr. Riley had a petition for review of a Board of Immigration Appeals order, not the final order, which Riley decided was the final administrative removal order, the FARO, in that case. Unlike Mr. Riley, Ms. Saraiva-Martinez has done exactly what the Supreme Court said she should do. She filed a petition for review of the final order of removal, which in this case is the reinstatement order. And the CAT claim and her fear-based claims under A4 of 1252 and B9 tell the courts that the CAT order and other issues that are a part of the final order of removal do have the opportunity to be reviewed by the circuit courts. And so, in this case, in addition to what the statute says and what Ms. Raleigh and Riley says, we also have the foreclosure of review creating not only constitutional questions, but going directly against the presumption in favor of judicial review of administrative action. And I think if there's any ambiguity here, the presumption in favor of judicial, of review of administrative action puts that ambiguity at rest and allows the court to find that it not only has jurisdiction, but that equitable polling is warranted. Now, as to Nelson, Your Honor, the question that you asked responding earlier, in fact, Nelson, which came after the court's decision in Harrow, found that even though they were presented with an argument that 26B and interstitial foreclosed tolling for a statutory limitations period, they rejected that argument and found that tolling was nevertheless available for the statutory limitations period. Without much analysis and not citing Harrow, because all Harrow, the court just chose not to address the Solicitor General's argument, did it? Yes. Yes, Your Honor, that is correct. We chose not to address it. But I think it's important to note that in remanding, the court nevertheless acknowledging the specific page of the brief in which that argument was raised said that on remand, the government nevertheless has a high bar pointing to the Irwin presumption. And I think in this case, when we apply the bar and we go through the factors that the equitable tolling is warranted here. Okay. We appreciate both sides' arguments and we will now take this case and decide it. And we're going to take a short break. We'll be back at 1030 for the final argument.